60 361
102 365

DEWEY ET AL. v. LIFE ET AL.

1. **Statute of Frauds:** CONTRACT WITHIN PROVED BY DEFENDANTS. Plaintiffs sought to enforce an oral contract for the sale of land, and, to avoid the statute of frauds, pleaded that they would prove the contract by the testimony of the defendants. Upon consideration of the evidence it was *held* that the contract was fairly established by defendant's testimony, and that, therefore, their plea of the statute of frauds could not avail them as a defense. Code, § 3667.

2. **Contract for Sale of Land:** CONSIDERATION: SPECIFIC PERFORMANCE. Where defendants held a tax title to certain lands, from which plaintiffs claimed to have the right to redeem, and, to avoid litigation, it was agreed between the parties that plaintiffs should convey to defendants one portion of the land, and that defendants should convey to plaintiffs the other portion and pay plaintiffs a certain sum of money, provided, however, a certain deed to a third party could be set aside, which, if valid, would cut of plaintiff's right to redeem; and plaintiffs agreed to pay the costs and attorney's fees incurred in an action to be brought to set aside the deed, *held* that such agreement was supported by a sufficient consideration, and that plaintiffs, having performed on their part, were entitled to a decree for specific performance upon the part of the defendants.

*Appeal from Tama Circuit Court.*

FRIDAY, DECEMBER 15.

ACTION for specific performance, and the recovery of a money judgment against the defendants. They pleaded the statute of frauds and a prior adjudication. The court rendered a, money judgment, as asked, but refused to decree a specific performance, and both parties appeal.

*W. H. Stivers.* and *Graham & Cady*, for appellants.

*Hubbard & Clark*, for appellees.

SEEVERS, CH. J.—1. Under the belief that George Dewey husband of the plaintiff, Sarah, and father of the other plaintiffs, was the owner at his death of two tracts of land, one containing sixty and the other forty acres, the defendants made a contract in relation thereto with Hubbard & Deacon, attorneys and agents of the plaintiffs. At the time the contract was made, one Beeson, owned a tax title to a portion of the land, and the defendants to the residue. If George Dewey died owning the land, the plaintiffs had the right to redeem from the tax titles. Upon the supposition such right existed, the defendants agreed to pay twelve hundred dollars for the sixty acre tract, if a quitclaim deed could be procured from Beeson, and convey the forty acres to the plaintiffs. The contract was that defendants should purchase the Beeson title, and the amount paid therefor, together with the amount it would take to redeem from the defendants, should be deducted from the price agreed to be paid for the sixty acres. Before the plaintiffs could convey their interest, it was essential to obtain an order from the probate. court. This was done; the Beeson title acquired, and the parties met and agreed upon the amount to be paid after making the deductions aforesaid. Notes and conveyances were drawn,. and the parties separated with the understanding the contract would be consummated

1. STATUTE of fraud : contract within proved by defendant.

Dewey v. Life.

in a few days. The contract was oral and to avoid the statute of frauds the plaintiffs pleaded they expected to establish it by the evidence of the defendants. This, we think, they have done. Mr. Deacon was introduced as a witness for the plaintiffs, and gave evidence tending to establish a contract substantially as above stated. The defendant, Geo. M. Life, was then introduced as a witness for the plaintiffs, and testified he made an arrangement for his wife (one of the defendants) "with Hubbard & Deacon, for Mrs. Dewey, for the purchase of this land; the contract price was $20 per acre, which we were to pay in case the legal title resulted in the Deweys, and provided Mrs. Dewey gave a warranty deed for the same. I understood her heirs were interested in the land. Heard the testimony of Deacon; it is nearly correct; there is some variation from my recollection, but the letters will settle that." The letters introduced in evidence, referred to by the witness, do not show there is any substantial difference between the evidence of Deacon and Life. We feel quite clear the contract above stated has been established by the evidence of one of the defendants, and therefore the statute of frauds cannot avail the defendants as a defense to the action. Code, § 3667.

The contract was entered into in 1875, and afterward, in June of that year, the parties reached the conclusion above stated as to the amount to be paid by the defendants. A few days thereafter the defendants were advised there was in existence a deed, executed in 1862, by Geo. Dewey and the plaintiff, Sarah, conveying the premises in controversy to Brown & Harper. The defendants thereupon declined to consummate the contract, as we think they had the right to do, because if the conveyance was valid the plaintiffs had no right to redeem and nothing to sell. The plaintiffs claim the defendants subsequently, for a sufficient consideration, agreed to carry out and perform such contract. To that question we turn our attention.

II. When Hubbard & Deacon were informed of the

Brown-Harper deed, they insisted it had been given as collat-
eral security, the debt paid, and was therefore in-
valid.    The defendants had knowledge of this
claim.    To some extent the question was discussed
as to the best way to get rid of the deed.    Before
doing anything in that direction, Mr. Life advised with Gra-
ham & Cady as his attorneys.    He was informed by them that
if the deed was valid the plaintiffs had no right to redeem and
nothing to sell, but if it was invalid they had a right to re-
deem from the tax sales.    An arrangement was made for
Graham & Cady to bring an action to test the validity of the
deed.    They were to consult with Hubbard & Deacon, as the
latter were advised in a letter from one of the defendants, dated
July 2, 1875.    The plaintiffs insist that, either before or after
Graham & Cady were consulted, it was agreed between the
defendants and Hubbard & Deacon, for the plaintiffs, that if
the Brown-Harper deed could be set aside, the defendants were
to perform the contract referered to in the first division of
this opinion, upon the plaintiffs paying the costs and attorney
fees incurred in setting aside the deed.    Conceding there was
such a contract, the defendants insist it cannot be enforced be-
cause there was no consideration to support it.    But if the
deed was invalid the plaintiffs had the right to redeem and thus
avoid the tax titles under which the defendants claimed.

2. CONTRACT for sale of land: consideration: specific performance.

We do not deem it material whether the claim was well
founded or not.    The defendants were evidently uncertain as
to the validity of the deed, and made the contract to avoid
litigation and to insure their getting the land at the stipulated
price.    If defendants repudiated the contract, or refused to
make one, then the plaintiff might get the deed set aside and
redeem from the tax sales, and this, it is evident, the defendants
were anxious to prevent.    We think there was a sufficient
consideration for the contract.    The next inquiry is whether
the alleged contract has been established.    Judge Hubbard
testifies a contract was entered into, as claimed by the plaint-

iffs.   This Mr. Life denies.   The conflict between these witnesses cannot be reconciled.   The burden is on the plaintiffs.   The inquiry, therefore, is, which of these witnesses is materially corroborated.   Generally it may be said that it is not likely the plaintiff would have abandoned all claim to this land unless the Brown-Harper deed was known to be valid.   If the defendands in fact repudiated the contract and determined to rely solely on their tax title, it is but reasonable to suppose they would have so notified the plaintiffs.   They did nothing of the kind; and, to say the least, so acted as to permit them to claim under the contract, if it became essential to do so.   But this is not all, on August 3, 1875, defendants wrote Hubbard & Deacon that Graham had not advised them about the suit, and "do not know what your advice will be."   In reply Hubbard & Deacon wrote that "it looks like the Dewey matter would have to be settled by a suit commenced by yourself to quiet title under the tax deed     *       *       *.   We so far have been unable to effect any settlement."   In January afterward, defendants wrote Hubbard & Deacon, making some inquiries as to the suit and said; "The suit being a friendly one to determine the rights of the several individuals, there can be no impropriety in giving information, even though you may be counsel for the defendants."   There is no pretense that the suit is a friendly one as to Brown & Harper.   Nor is it claimed that Hubbard & Deacon were acting for the latter.   As to the plaintiffs, the suit was a friendly one only upon the supposition there was some understanding that made it so.   Upon the faith of some understanding, the plaintiffs made default and permitted a decree to go against them.

No other understanding is claimed or suggested except the contract above stated.   It must have been that, or the suit was adversary as between plaintiffs and defendants.   But this cannot be so, for before the suit was commenced, and on July 2, defendants wrote Hubbard & Deacon:   "We hope the utmost will be done to settle without suit, for which there is no occassion in form of Dewey v. Life, or Life v. Dewey."   That

is to say, between the parties named there is no controversy. "If it should take the form of Brown & Harper v. Life, counsel in our behalf will be as Graham will agree with Hubbard & Deacon." It will be remembered that Hubbard testifies the plaintiffs were to pay the costs and attorney fees in the suit to quiet title, and this we suppose is what Graham and Hubbard & Deacon were to agree about. We feel constrained to hold that the letters under the circumstances materially corroborate Hubbard, and that the preponderance of the evidence is with the plaintiffs.

It is said it has not been shown that the Brown-Harper deed was invalid. This is true. The plaintiff was not called on to so prove in the suit to quiet title, because that suit between the parties was a friendly one to get rid of the Brown-Harper deed, and there is no such issue in this case. But if there was, we do not regard the question as material. The consideration was sufficient, and the contract based upon avoiding any litigation between these parties. The defendants must perform as they contracted.

We think the court erred in not requiring the defendants to specifically perform as they agreed to do. On the defendants' appeal the judgment below will be affirmed, and on plaintiffs' appeal

REVERSED.